1  Bobby Samini (State Bar No. 181796)
   SAMINI LAW GROUP LLP
2  17900 Von Karman Ave. #150
   Irvine, California 92614
3  Telephone: (949) 724-0900
   Facsimile: (949) 724-0901
4
   [Proposed] Reorganization Counsel for
5  Debtors and Debtors-in-Possession

6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                          SANTA ANA DIVISION

11 In re                                )  Case No. 8:11-bk-14460-TA
                                        )
12                                      )  [Jointly Administered with Case
   ☒ DIGITALPOST INTERACTIVE, INC., a   )  8:11-bk-14461-TA]
13 Nevada corporation,                  )  8:11-bk-14463-TA]
                                        )  Chapter 11
14 ☒ ROVION INC., a Delaware corporation, )
                                        )
15 ☒ THE FAMILY POST INC., a California  )  EMERGENCY MOTION FOR INTERIM
   corporation,                         )  AND FINAL ORDERS: (I)
16                                      )  AUTHORIZING THE USE OF CASH
                                        )  COLLATERAL; AND (II) GRANTING
17                                      )  ADEQUATE PROTECTION PURSUANT
                                        )  TO 11 U.S.C. §§ 361 AND 363;
18          Debtors and Debtors-in-      )  MEMORANDUM OF POINTS AND
            Possession.                  )  AUTHORITIES AND DECLARATION
                                        )  OF MICHAEL SAWTELL IN SUPPORT
19                                      )  THEREOF
                                        )
20                                      )
                                        )
21                                      )
                                        )
22                                      )  DATE:   April 6, 2011
                                        )  TIME:   11:00 AM
23                                      )  PLACE:  Courtroom 5B, 411 W. Fourth St.
                                        )          Santa Ana, CA
24                                      )
                                        )
25                                      )
                                        )
26                                      )
                                        )
27

28

**TO THE HONORABLE THEODORE ALBERT, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR'S TWENTY LARGEST UNSECURED CREDITORS, AND THE DEBTOR'S PRIMARY SECURED LENDERS:**

**PLEASE TAKE NOTICE** that DigitalPost Interactive, Inc, along with its related entities Rovion Inc. and The Family Post Inc. the debtors and debtors-in-possession in this chapter 11 case (the "Debtors"), hereby move the Court on an emergency basis, pursuant to sections 105, 361 and 363 of the Bankruptcy Code, and Federal Rules of Bankruptcy Procedure 2002 and 4001:[1]

(1)    for authority to use, in the ordinary course of the Debtor's business, existing cash on hand and cash receipts from its business operations, including receipts from collections of accounts receivable, that constitute the cash collateral of the Debtor's secured lenders with interests therein (the "Cash Collateral"). The Debtor and its senior secured lender, Agile Opportunity Fund, LLC ("Agile"), have agreed on a form of order which grants the Debtor the authority to use Cash Collateral (the "Stipulated Interim Order"). A true and correct copy of the Stipulated Interim Order is attached to the Sawtell Declaration as Exhibit "1;" and

(2)    for authority, pursuant to Bankruptcy Rule 4001(b), pending the final hearing on this Emergency Motion (the "Final Hearing"), for emergency interim approval of the use of Cash Collateral (the "Interim Amount") on the terms and conditions set forth in the Stipulated Interim Order; and

(3)    to schedule (i) an emergency hearing pursuant to Bankruptcy Rule 4001 for the approval of the use of Cash Collateral up to the Interim Amount; and (ii) a Final Hearing to consider the approval of the use of Cash Collateral on a permanent basis.

## NECESSITY OF EMERGENCY HEARING PURSUANT TO LOCAL BANKRUPTCY RULE 9075-1(a)

---

[1] The Debtor's wholly-owned subsidiaries, Rovion, Inc. and The Family Post Inc. have concurrently filed chapter 11 cases.

1    The Debtor, along with its wholly-owned subsidiaries, is in the business of on-line

2  marketing and media.  The Debtor does not believe that it has the financial strength at this time to

3  successfully reorganize its business.  Instead, it is the intention of the Debtor to commence an

4  orderly liquidation of its business assets through the instant Chapter 11 proceeding, pending the

5  hearing.  However, the Debtor must continue to operate some aspects of its business to preserve

6  the value of its business.  In this regard, the Debtor prepared an operating budget intended to

7  preserve the value of the Debtor's assets pending the anticipated conversion.

8    Failing to approve the use of Cash Collateral on an emergency basis will result in a loss of

9  value to the estate through the immediate shutdown of the Debtor's operations.  This would result

10  in the loss of valuable employees needed to continue operations and collect accounts receivable

11  and the further loss of valued customer relationships.  Customers would likely move to other on-

12  line providers.  Accounts receivable also would become more difficult to collect as customers

13  become less dependent on the Debtor for services.

14    In light of the foregoing, the Debtor requests that the Court set a hearing on this

15  Emergency Motion as soon as practicable.

16    This Emergency Motion is made and based upon the Memorandum of Points and

17  Authorities and the Sawtell Declaration attached hereto and upon any additional evidence, both

18  oral and documentary, that may be presented to the Court at or before the time of the hearing on

19  this Emergency Motion.

20    **PLEASE TAKE FURTHER NOTICE** that any party-in-interest intending to oppose the

21  relief sought in this Emergency Motion must attend the scheduled hearing.  Failure to appear at the

22  hearing on this Emergency Motion may constitute consent to the relief requested.

23    **WHEREFORE**, the Debtor requests that this Court hold a hearing on the Emergency

24  Motion and issue its order:

25    (a)    affirming the adequacy of the notice provided given the circumstances of this case;

26    (b)    authorizing the Debtor's interim use of Cash Collateral;

27    (c)    setting a Final Hearing to consider the Debtor's use of Cash Collateral on a

28  permanent basis;

EMERGENCY MOTION FOR INTERIM AND FINAL
ORDERS AUTHORIZING THE USE OF CASH          - 3 -
COLLATERAL, ETC.

1          and

2          (d)      granting such other and further relief as the Court deems just and proper.

3    DATED:  April 4, 2011                              SAMINI LAW GROUP, LLP

4
                                                        By:

5                                                            Bobby Samini
6                                                        [Proposed] Counsel for
                                                        Debtor and Debtor-in-Possession
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

### A.    Background

The Debtor, along with its wholly-owned subsidiaries, Rovion Inc. ("Rovion") and The Family Post Inc. ("Family Post") are in the business of on-line banner advertising as well as operating a website which provides individuals a platform to store and share digital media.  The Debtor's corporate headquarters are located in Irvine, California.  The Debtor has business facilities in California and Massachusetts.

On March 30, 2011, a voluntary petition for relief under chapter 11 of the Bankruptcy Code was filed by the Debtor and its wholly-owned subsidiaries, Rovion and Family Post.

The Debtor's current financial condition and business prospects are such that the Debtor does not have the ability to operate without a significant infusion of funds or the continuous use of the cash collateral.  The Debtor is currently in discussions with Local.com with respect to Local.com's potential acquisition of the Debtor's assets and the possibility of obtaining Debtor-in-Possession financing from Local.com, the Debtor will need to use cash collateral to maintain continued operation until the assets can be sold.  In the interim, however, the Debtor must continue to operate in a manner that serves to preserve the value of the Debtor's assets.

### B.    Existing Secured Debt

#### 1.    DigitalPost Secured Debt

On or about May, 2008 thru September 2008, the Debtor Digital Post and Agile entered into a loan transaction with Agile pursuant to which the Debtor borrowed approximately $907,000 (the "Agile Loan").  The Agile Loan was evidenced by, inter alia, three promissory notes and related documents (the "Agile Loan Documents").

In total, the Borrower DigitalPost currently owes approximately $1,000,000 to Agile pursuant to the Agile Loan Documents.  Pursuant thereto, Agile's asserts a first-priority lien and

1   security interest in substantially all of the Debtor's assets, and the proceeds and recoveries of the

2   foregoing (defined herein as the "Prepetition Collateral").

3

4           2.    **Rovion Secured Debt**

5         On or about July 26, 2007, the Debtor Rovion and TD Banknorth, N.A.("TD")

6   entered into a loan transaction with TD pursuant to which the Debtor Rovion borrowed

7   approximately $60,000.00 (the "TD Loan").  The TD Loan was evidenced by, inter alia, two

8   Promissory Notes, two Commercial Security Agreements and a Guaranty (the "TD Loan

9   Documents").

10        In total, the Borrower Rovion currently owes approximately $75,000.00 to TD pursuant to

11  the TD Loan Documents.  Pursuant thereto, TD asserts a first-priority lien and security interest in

12  substantially all of the Debtor's assets, and the proceeds and recoveries of the foregoing (defined

13  herein as the "Prepetition Collateral").

14

15      **C.**    **Urgent Need for the Use of Cash Collateral**

16        Without authorization to use Cash Collateral, the Debtor lacks sufficient cash to meet its

17  short-term financial obligations.  If the Debtor is unable to obtain immediate approval of the

18  Stipulated Interim Order, the Debtor will be unable to pay its key employees and operating

19  expenses during the time frame prior to the anticipated conversion of its case.

20        As of the date of the date of the filing of the Petition, the Debtor has approximately

21  $15,000.00 of available cash, all of which constitutes Cash Collateral.  The Debtor also has

22  accounts receivable which may be liquidated during the next 4-weeks in the amounts of $40,000.

23  The Debtor projects that its wind-down and liquidation-related expenditures for the 4-weeks

24  following the entry of the order for relief will be approximately $220,000.  The Debtor is

25  concurrently negotiating with Local.com to provide Debtor with post-petition financing sufficient

26  to continue the operations of the Debtor for a limited period of time.

27

28

EMERGENCY MOTION FOR INTERIM AND FINAL
ORDERS AUTHORIZING THE USE OF CASH
COLLATERAL, ETC.

1       The Debtor negotiated the terms of the Stipulated Interim Order with Signature at arm's

2  length and in "good faith," with the parties represented by experienced counsel.  The Stipulated

3  Interim Order provides for the following as adequate protection to Agile and TD:

4       In light of, among other things, the necessity of the use of Cash Collateral, the Debtor

5  believes that the terms and conditions for the use of Cash Collateral set forth in the Stipulated

6  Interim Order, are fair, reasonable and in the best interests of the Debtor's estate.

7  **II.**

8  **<u>LOCAL RULE 4001-2 AND LOCAL RULE FORM 4001-2 REQUIRED DISCLOSURES</u>**

9       Local Bankruptcy Rule 4001-2 and Local Rule Form 4001-2 require that all motions

10  seeking approval of cash collateral stipulations must recite whether the proposed form of order

11  contains any of certain enumerated types of provisions.  The proposed Stipulated Interim Order

12  contains the following provisions which require identification pursuant to Local Rule Form 4001-

13  2:

| Type of Provision | Location in Documents |
|---|---|
| Provisions that grant cross-collateralization protection | None |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien or debt or the waiver of claims against the secured creditor | None |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's lien and liens held by parties who are not party to the stipulation, or which create a lien senior or equal to any existing lien | None |
| Provisions that seek to waive the estate's rights under 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the debtor is authorized to use cash collateral or borrow funds | None |
| Provisions that operate, as a practical matter, to divest the debtor-in-possession of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief | None |
| Releases of liability for the creditor's alleged prepetition torts or breaches of contract | None |
| Waivers of avoidance actions arising under the Bankruptcy Code | None |
| Automatic relief from stay upon default, conversion to chapter 7, or appointment of a trustee | None |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens | None |
| Provisions that grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. § 544, 545, 547, 548, or 549 | None |
| Waivers, effective on default or expiration, of the debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the | None |

| Type of Provision | Location in Documents |
|---|---|
| absence of the secured party's consent | |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order | None |
| Provisions for the paying down of prepetition principal owed to a creditor | None |
| Findings of fact on matters extraneous to the approval process | None |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. § 552(b) | None |
| Provisions that provide disparate treatment for the professionals retained by a creditors' committee with respect to a professional fee carve out | None |
| Provisions that prime any secured lien must: (i) identify the location of any such provision in the proposed form of order and/or loan agreement; and (ii) contain specific justification for priming | None |

### III.

### ARGUMENT

A.   **Use of Cash Collateral Pursuant to the Stipulated Interim Order is in the Best Interests of Creditors of the Estate**

The Debtor's use of property of the estate is governed by section 363 of the Bankruptcy Code.[2]  Section 363(c)(1) permits a debtor-in-possession to use, sell or lease property in the ordinary course of business.  However, section 363(c)(3) imposes an absolute prohibition on the use, sale or lease of cash collateral unless either (1) the creditor with an interest in the collateral consents, or (2) the court authorizes the use after notice and a hearing.

Cash collateral is defined in Section 363(a) as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest . . ."  Agile and TD have asserted an interest in the revenues generated by the operation of the Debtor's business.  Therefore, such revenues may constitute cash collateral pursuant to section 363(a) of the Bankruptcy Code.

Where use of cash collateral is authorized, it may only be used to pay the actual and

---

[2]  Section 363(c) provides:

(1)     If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

EMERGENCY MOTION FOR INTERIM AND FINAL
ORDERS AUTHORIZING THE USE OF CASH
COLLATERAL, ETC.

1    necessary expense of operation.  In re Plaza Family Partnership, 95 B.R. 166 (E.D. Cal. 1989); In

2    re MadCat Two, Inc., 120 B.R. 990 (Bankr. E.D. Ark. 1990).  The Debtor submits that all of the

3    expenses listed in the Budget attached as Exhibit "1" are necessary to the continued operation of

4    the Debtor's business during the wind-down period prior to the anticipated conversion of its

5    chapter 11 case to one under chapter 7.

6          In addition, pursuant to section 363(e) of the Bankruptcy Code, the Court may condition

7    the use of property, including cash collateral, as necessary to provide adequate protection of an

8    entity's interest in such cash collateral.  Adequate protection is intended to compensate for the risk

9    of "decrease in the value of [the secured creditor's] interest in such property."  11 U.S.C. § 361.

10         Section 361 of the Bankruptcy Code provides various examples of what may constitute

11   adequate protection.[3]  Under section 361(2), adequate protection may take the form of additional

12   or replacement liens on property not subject to the creditor's lien.  This form of adequate

13   protection is generally used where a creditor has a pre-petition lien in after-acquired property that

14   does not attach to property acquired post-petition pursuant to section 552(a) of the Bankruptcy

15   Code.  See e.g., In re Charles MacArthur Dairies, Inc., 16 B.R. 123 (Bankr. M.D. Fla. 1981); In re

16   Carl A. Niese, Inc., 16 B.R. 600 (Bankr. S.D. Fla. 1981).

17         In this case, the Debtor's proposed use of the Cash Collateral will allow the Debtor to

18   continue its ongoing operations during the next 4-weeks to allow for a sale to Local.com or such

19   other interested party.  This proposed use will preserve the value of the Debtor's assets.

20

_____

21        [3] Section 361 provides that adequate protection may be provided by --

22        (1) requiring the trustee to make a cash payment or periodic cash payments to
     such entity, to the extent that the stay under section 362 of this title, use, sale, or
23   lease under section 363 of this title, or any grant of a lien under section 364 of this
     title results in a decrease in the value of such entity's interest in such property;

24        (2) providing to such entity an additional or replacement lien to the extent that
     such stay, use, sale, lease, or grant results in a decrease in the value of such entity's
25   interest in such property; or

26        (3) granting such other relief, other than entitling such entity to compensation
     allowable under section 503(b)(1) of this title as an administrative expense, as will
27   result in the realization by such entity of the indubitable equivalent of such entity's
     interest in such property.

28

1   Therefore, to preserve maximum value for creditors, the Court should grant the relief requested

2   herein.

3       **B.    Relief at the Interim and Final Hearings**

4           In accordance with Bankruptcy Rule 4001(b), the Debtor requests interim approval of the

5   proposed uses of Cash Collateral contained in the Budget and the Stipulated Interim Order, and,

6   upon a later hearing date, final approval of the use of Cash Collateral.

7       **C.    Request for Immediate Interim Relief and Scheduling of Final Hearing**

8           Bankruptcy Rule 4001(b) provides that a final hearing on a motion to authorize the use of

9   cash collateral pursuant to § 363 of the Bankruptcy Code may not be commenced earlier than

10  fifteen (15) days after the service of such motion.  Upon request, however, the Court is

11  empowered to conduct a preliminary expedited hearing on the motion and authorize the use of

12  cash collateral, to the extent necessary to avoid immediate and irreparable harm to a debtor's

13  estate.  See Fed. R. Bankr. P. 4001(b)(2).  After the 15-day period, the request for approval of cash

14  collateral is not limited to those amounts necessary to prevent the destruction of a debtor's

15  business.

16          Pursuant to Bankruptcy Rules 4001(b), the Debtor requests that the Court conduct a

17  preliminary expedited hearing (the "Interim Hearing") to enter the Stipulated Interim Order

18  authorizing the Debtor to fund those expenses needed to keep the Debtor operating at a minimal

19  level and to begin the process of liquidating its assets, in amounts not to exceed the amounts

20  established in the Budget, for the time period preceding the final hearing on the Motion.  This

21  interim relief will avoid immediate and irreparable harm and prejudice to the Debtor's estate and

22  all parties-in-interest in this case.

23                                  IV.

24                                **NOTICE**

25          The Debtor has provided Electronic Mail notice of the hearing on this Emergency Motion

26  to the Office of the United States Trustee, the Debtor's primary secured creditors with asserted

27  interests in the Cash Collateral, creditors holding the twenty largest general unsecured claims, and

28  parties requesting special notice.  In addition, the Debtor will serve copies of this Emergency

EMERGENCY MOTION FOR INTERIM AND FINAL
ORDERS AUTHORIZING THE USE OF CASH              - 10 -
COLLATERAL, ETC.

1  Motion on the Office of the United States Trustee, the Debtor's primary secured creditors with

2  asserted interests in the Cash Collateral, creditors holding the twenty largest general unsecured

3  claims, and parties requesting special notice by facsimile, and will provide a copy of this

4  Emergency Motion to any party that appears at the hearing scheduled by the Court.

5                                                    V.

6                                             **CONCLUSION**

7         Based on the foregoing points and authorities, the Debtor respectfully requests that the

8  Court enter the proposed Stipulated Interim Order approving the use of Cash Collateral on an

9  interim basis, set a final hearing on this Emergency Motion and, at that final hearing, approve the

10  use of Cash Collateral pursuant to the Budget on a permanent basis.

11  DATED:  April 4, 2011                        SAMINI LAW GROUP LLP

12

13                                              By:

14                                                    Babak Samini
                                                    [Proposed] Counsel for
15                                                    Debtor and Debtor-in-Possession

16

17

18

19

20

21

22

23

24

25

26

27

28

EMERGENCY MOTION FOR INTERIM AND FINAL
ORDERS AUTHORIZING THE USE OF CASH                    - 11 -
COLLATERAL, ETC.

## DECLARATION OF MICHAEL SAWTELL

I, Michael Sawtell, declare as follows:

1.      I am the President of The DigitalPost Interactive, Inc. (the "DigitalPost").  I am also the President of the Debtor's wholly-owned subsidiarie, The Family Post, Inc. ("Family Post") and I am the Director of Rovion Inc., ("Rovion").  (DigitalPost, Family Post and Rovion are sometimes collectively referred to as the "Debtor").

2.      My current duties for the Debtor includes oversight of the Debtor's business operations, the development of the Debtor's business plans and strategies, participating in negotiations concerning the Debtor's financial restructuring activities and implementation thereof, and the management of the Debtor's assets and operations.  I am authorized by the Debtor to submit this Declaration

3.      I have general knowledge of the Debtor's books and records, and I am familiar with the Debtor's financial and operational affairs.

4.      I submit this Declaration in support of the "Emergency Motion for Interim and Final Orders: (I) Authorizing the Use of Cash Collateral; and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363, Etc." (the "Emergency Motion").  I have reviewed the facts set forth in the Emergency Motion and such facts are incorporated as though fully set forth herein.

5.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or my opinions based upon my experience and knowledge of the Debtor's operations and financial condition.  If I were called to testify, I could and would testify competently to the facts set forth in this Declaration.

6.      By the Emergency Motion, the Debtor requests the following relief:

(1)      for authority to use, in the ordinary course of the Debtor's business, existing cash on hand and cash receipts from its business operations, including receipts from collections of accounts receivable, that constitute the cash collateral of the Debtor's secured lenders with interests therein (the "Cash Collateral").  DigitalPost and its senior

secured lender, Agile Opportunity Fund, LLC  ("Agile"), have agreed on a form of order which grants the Debtor the authority to use Cash Collateral (the "Stipulated Interim Order").  A true and correct copy of the Stipulated Interim Order is attached hereto as Exhibit "1;"

   (2) for authority, pursuant to Bankruptcy Rule 4001(b), pending the final hearing on this Emergency Motion (the "Final Hearing"), for emergency interim approval of the use of Cash Collateral;

    (3) to schedule (i) an emergency hearing pursuant to Bankruptcy Rule 4001 for the approval of the use of Cash Collateral up to the Interim Amount; and (ii) a Final Hearing to consider the approval of the use of Cash Collateral on a permanent basis; and

7. The Debtor, along with its wholly-owned subsidiaries, The Family Post and Rovion, are in the business of online advertising and operate a website which allows individuals to store and share media.  The Debtor has business facilities in California and Massachusetts.

8. On March 30, 2011, a voluntary petition for relief under chapter 11 of the Bankruptcy Code was filed by the Debtor.

9. The Debtor's current financial condition and business prospects are such that the Debtor does not have the ability to operate without a significant infusion of funds or the continuous use of the cash collateral.  The Debtor does not anticipate any such infusion of cash, nor does the Debtor expect to have the use of cash collateral in its chapter 11 case for any significant length of time (except that Debtor may receive an operating loan from Local.com).  The Debtor, therefore, is in the position of commencing a liquidation of its assets and a wind-down of its business.

10. Failing to approve the use of Cash Collateral on an emergency basis will result in a loss of value to the estate through the immediate shutdown of the Debtor's operations.  This would result in the loss of valuable employees needed to sell inventory and collect accounts receivable and the further loss of valued customer relationships.  Customers would then move to other

1   suppliers, rendering inventory liquidation (especially at retail prices) far more difficult.  Accounts

2   receivable also would become more difficult to collect as customers become less dependent on the

3   Debtor for support.

4       **Existing Secured Debt**

5           11.      On or about May, 2008 thru September 2008, the Debtor Digital Post and Agile

6   entered into a loan transaction with Agile pursuant to which the Debtor borrowed approximately

7   $907,000 (the "Agile Loan").  The Agile Loan was evidenced by, inter alia, three promissory

8   notes and related documents (the "Agile Loan Documents").

9           12. In total, the Borrower DigitalPost currently owes approximately $1,000,000 to Agile

10  pursuant to the Agile Loan Documents.  Pursuant thereto, Agile's asserts a first-priority lien and

11  security interest in substantially all of the Debtor's assets, and the proceeds and recoveries of the

12  foregoing (defined herein as the "Prepetition Collateral").

13          13.      On or about July 26, 2007, the Debtor Rovion and TD Banknorth, N.A.("TD")

14  entered into a loan transaction with TD pursuant to which the Debtor Rovion borrowed

15  approximately $60,000.00 (the "TD Loan").  The TD Loan was evidenced by, inter alia, two

16  Promissory Notes, two Commercial Security Agreements and a Guaranty (the "TD Loan

17  Documents").

18          14. In total, the Borrower Rovion currently owes approximately $75,000.00 to TD

19  pursuant to the TD Loan Documents.  Pursuant thereto, TD asserts a first-priority lien and security

20  interest in substantially all of the Debtor's assets, and the proceeds and recoveries of the foregoing

21  (defined herein as the "Prepetition Collateral").

22      **Urgent Need for the Use of Cash Collateral**

23          15.      Without authorization to use Cash Collateral, the Debtor lacks sufficient cash to

24  meet its short-term financial obligations.  If the Debtor is unable to obtain immediate approval of

25  the Stipulated Interim Order, the Debtor will be unable to pay its key employees and operating

26  expenses during the time frame prior to the anticipated conversion of its case, and any opportunity

27  for unsecured creditors to obtain the Guaranteed Unsecured Creditor Distribution, which arises

28

EMERGENCY MOTION FOR INTERIM AND FINAL
ORDERS AUTHORIZING THE USE OF CASH          - 14 -
COLLATERAL, ETC.

1  from Signature's agreement to carve-out some of its collateral for distribution to unsecured

2  creditors, will be lost.

3      16.    As of the date of the filing of the chapter 11, the Debtor has approximately

4  $15,000.00 of available cash, all of which constitutes Cash Collateral.  The Debtor also has

5  accounts receivable which may be liquidated during the next 4-weeks in the amounts of

6  $40,000.00.  The Debtor projects that its wind-down and liquidation-related expenditures for the

7  4-weeks following the entry of the order for relief will be approximately $220,000.00.

8      17.    The Debtor negotiated the terms of the Stipulated Interim Order with Signature at

9  arm's length and in "good faith," with the parties represented by experienced counsel.  In light of,

10  among other things, the necessity of the use of Cash Collateral, the Debtor believes that the terms

11  and conditions for the use of Cash Collateral set forth in the Stipulated Interim Order, are fair,

12  reasonable and in the best interests of the Debtor's estate.

13      I declare under penalty of perjury under the laws of the United States of America that the

14  foregoing is true and correct.

15      Executed on this __4th__day of April, 2011, at ___Irvine_____, California.

16

17                  __/s/__Michael__Sawtell_____    _____
                Michael Sawtell

18

19

20

21

22

23

24

25

26

27

28

1                                    <u>Exhibits</u>

2    1 - Stipulated Interim Order

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  17900 Von Karman Ave. #150 Irvine, CA 92614

The foregoing document described as **DEBTORS' <u>EMERGENCY</u> MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING THE USE OF CASH COLLATERAL; AND (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF MICHAEL SAWTELL IN SUPPORT THEREOF [WITH EXHIBITS "1" AND "2" ATTACHED THERETO]**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>April 4, 2011</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

⊠ Service information continued on attached page

**II.  <u>SERVED BY U.S. MAIL OR OVERNIGHT MAIL</u>**(indicate method for each person or entity served)**:**
On <u>April 4, 2011</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

⊠ Service information continued on attached page

**III.  <u>SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL</u>** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>April 4, 2011</u>, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

<u>CAUSED TO BE SERVED VIA PERSONAL DELIVERY/MESSENGER</u>
Chambers of Honorable Theodore Albert
Courtroom 5B/Suite 5085
Ronald Reagan Bldg.
411 W. Fourth St.
Santa Ana, CA 92701

⊠ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 4/4/2011 | Lisa Marocco | /s/ Lisa Marocco |
|----------|--------------|------------------|
| *Date* | *Type Name* | *Signature* |

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Frank Cadigan    frank.cadigan@usdoj.gov

- Babak Samini    bsamini@alsalaw.com

- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**SERVED VIA OVERNIGHT MAIL**

Robert and Carol Lehman
1578 Conestoga Trail, N.E.
Swisher, IA 52338

Steve Daniels
113 Qua Paw Trail
Maumelle, AR 72113

Laszlo Borsai
2235 S. Loara St.
Anaheim, CA 92802

Leland and Nadine Polak
4641 Tanango Dr.
Woodland Hills, CA 91364

American Express
P.O. Box 0001
Los Angeles, CA 90096-8000

**SERVED VIA EMAIL**

- Agile Opportunity Fund, LLC
  david@agileopportunity.com

- TD Banknorth NA
  Diane.Whitten@yesbank.com

- Peter and Irene Gauld
  pgg7606@gibtelecom.net

- Rob M. Thomas Trust UTD 1/21/05, Rob M. Thomas, TTEE
  rmthomascpa@att.net

- Steve and Amy Boucher –
  steveamyboucher@comcast.net

- Bruce and Laurie Williams –
  williamsbrucelaurie@gmail.com

- Ron Maloney -
  ronm@nbnet.nb.ca

EMERGENCY MOTION FOR INTERIM AND FINAL
ORDERS AUTHORIZING THE USE OF CASH
COLLATERAL, ETC.

- 18 -

1

2
- Alexander MacDougall –
  sandy.macdougall@mortgagevintage.com

3

4
- Randall and Carol MacDougall –
  rmacdougall@q10dc.com

5
- Allan MacDougall Jr. –
  lanny@schofield-macdougall.com

6
- Steven Dong –
  sdong@dglp.com

7

8
- Michael Sawtell
  msawtell@dglp.com

9

10
- Brian Goss
  Brian@rovion.com

11
- Matthew Staker
  mstaker@sbcglobal.net

12

13
- Randy MacDougall –
  rmacdougall@q10dc.com

14
- Laurie Barnes –
  lbarnes944@aol.com

15

16
- Charles and Margart Vezzetti –
  desertart@gamil.com

17
- Mark Polak
  mark@lemarkins.com

18

19
- Agile Opportunity Fund, LLC
  david@agileopportunity.com

20

21
- Bob Grant
  tgrant@gmail.com

22

23
- David Arslanian
  David@rovion.com

24
- David Simon
  dsimon@rovion.com

25

26
- Lihn Trin
  ltrinh@dglp.com

27

28

EMERGENCY MOTION FOR INTERIM AND FINAL
ORDERS AUTHORIZING THE USE OF CASH
COLLATERAL, ETC.